# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-191


**TERRA COTTA'S CAFE, LLC**

**VERSUS**

**RICHARD AND KAYLYNN POOLE**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-5570
HONORABLE J. DAVID PAINTER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**OSWALD A. DECUIR**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**REVERSED AND RENDERED.**


**Jennifer Jones**
**Jones Law Firm**
**P. O. Drawer 1550**
**Cameron, LA 70631**
**(337) 775-5714**
**Counsel for Defendant/Appellant:**
    **Richard and Kaylynn Poole**

**P. Jody Lavergne**
**Joel M. Lutz**
**Stutes, Fontenot, Lavergne & Lutz, LLC**
**P. O. Box 1644**
**Lake Charles, LA 70602**
**(337) 433-0022**
**Counsel for Plaintiff/Appellee:**
    **Terra Cotta's Cafe, LLC**

**DECUIR, Judge.**

This appeal stems from a non-compete agreement entered into by the buyer and seller of a restaurant establishment. Terra Cotta's Café sued Kaylynn and Richard Poole for allegedly violating the terms of an agreement executed as part of the sale of the Poole's business in June of 2000. After granting an injunction against the Pooles, the trial court rendered judgment in favor of Terra Cotta's Café and awarded damages in the amount of $67,320.00 and $35,621.77 in attorney fees and litigation expenses. The court assessed damages in an amount which it considered to be the value of the non-compete agreement. The Pooles perfected this appeal, alleging error in the judgment of the trial court. For the following reasons, we reverse.

Kaylynn and Richard Poole successfully operated a restaurant known as Kaylynn's Kafe in downtown Lake Charles. In 2000, having to attend to medical needs and wanting to travel, the Pooles decided to close their restaurant. They were approached by Marcie Rome and Danette Kelemen who were interested in buying the business and opening a restaurant to be called Terra Cotta's Café. After negotiations, the parties agreed on a price of $125,000.00, and a buy/sell agreement, drafted by the buyers, was executed by the Pooles and Terra Cotta's Café, LLC. Prior to the sale, the buyers' attorney also drafted a contract entitled Louisiana Covenant Not to Compete and sent it to the Pooles for their review. The Pooles then discussed the agreement with Terra Cotta's attorney and ultimately signed it. When the sale was passed, the buyers received the restaurant equipment and furnishings as well as the goodwill of the business, the location and beneficial lease terms, minimal training by Kaylynn Poole and her staff, the right to buy Kaylynn's desserts, and the benefit of the non-compete agreement. None of these items was assigned a particular value in the sale documents.

The non-compete agreement contained the following provisions pertinent to the matter before us:

1.

For purposes of this Agreement, the business of the Buyer is defined as the operation and ownership of a restaurant establishment which sells consumable food products and perishable consumer goods to the public.

2.

Seller (and any person or any enterprise controlled by Seller) shall not, directly or indirectly, (a) own, manage, operate, control, be employed by, participate in, be connected with (whether as a proprietor, owner, partner, stockholder, director, officer, employee, agent, consultant, joint venturer, contractor, investor or other participant or otherwise) an enterprise that carries on or engages in a business directly or indirectly competitive with that of Buyer or which directly or indirectly solicits for business directly or indirectly competitive with that of Buyer, or (b) otherwise be involved or connected in any manner with the ownership, management, operation, promotion, advertisement, solicitation of customers, marketing or sales effort, control or otherwise of or for any enterprise that carries on or engages in a business directly or indirectly competitive with that of Buyer, or which directly or indirectly solicits for business directly or indirectly competitive with that of Buyer. In addition, without limiting the foregoing, it is also agreed that Seller (and any person or enterprise controlled by Seller) shall not, directly or indirectly, through Seller's own efforts or by assistance or encouragement from any other person or enterprise solicit for hire or hire or retain any employee or independent contractor employed by Buyer.

Notwithstanding the foregoing, **Seller retains the right to engage in the business of catering** and, except as provided in Section 5 of this Agreement, wholesale sales of consumable food products, and such business shall not be deemed to directly or indirectly be competitive with the business of the Buyer. [Emphasis added.]

3.

The restrictions provided in Section 2 of this Agreement shall be binding upon Seller for a period of two (2) years following the effective date of this Agreement. In addition, the restrictions provided in Section 2 of the Agreement shall be operative with respect to activities which occur, in whole or in part, in Calcasieu Parish, State of Louisiana.

. . . .

5.

5.1    Seller agrees that Seller will not offer pastries for wholesale to any restaurant or other retail business located or operating within Calcasieu Parish except for Buyer, and that Buyer will have the exclusive right to purchase such pastries at wholesale from Seller, subject to the terms and conditions set forth in this Section 5.

5.2    The obligation of Seller and the right of Buyer set forth in Section 5.1 shall continue so long as Buyer purchases from Seller pastries and other consumable food products with an average wholesale value of SIX THOUSAND AND NO/100 DOLLARS ($6,000.00) per month (the "Minimum Sales Quota"). The determination of whether Buyer has met the Minimum Sales Quota shall be made quarterly beginning September 15, 2000, by averaging the Buyer's purchases of pastries and other consumable food products from Seller over the previous three months.

. . . .

5.4    The obligation of Seller and the right of Buyer set forth in Section 5.1 shall continue to apply to the following five (5) cakes, or any substantially similar cakes, at all times, regardless of whether Buyer meets the Minimum Sales Quota:

a.    Red Velvet Cake
b.    Hummingbird Cake
c.    Chocolate Praline Cake
d.    Italian Creme Cake
e.    Coconut Creme Cake

The record before us shows that the Pooles opened a catering business out of their home in Cameron Parish immediately after the sale of their restaurant to Terra Cotta's Café. The invoices and testimony indicate they primarily catered weddings, provided quantity lunches to a few businesses in Lake Charles, and sold cakes to individuals. All of the items sold were prepared pursuant to special orders placed ahead of time by the customers, and most items were delivered to the customers by the Pooles. There was testimony showing that the Pooles once sold cakes or pastries at the Contraband Days Festival in Lake Charles and at least once sold a large quantity of pies at a discounted price to a business for use as holiday gifts to its customers. The Pooles also provided cakes for resale to a business called La

3

Quicherie after Terra Cotta's failed to fulfill the minimum sales quota, over several months, as provided for in the non-compete agreement.

The trial court found the activities of the Pooles were in violation of the non-compete agreement. In the initial injunction proceedings, the trial court set forth certain definitions which were not part of the agreement but would thereafter govern the parties. Specifically, the trial court chose to define the "business of catering" as "the sale and delivery of cakes and/or pastries including the provision of labor to serve the cakes and/or pastries." The court defined the term "wholesale" as "a sale for the purpose of resale or a sale for purposes other than resale, but at the price at which retailers currently purchase the same or similar goods or commodities at current wholesale prices, but only when the sale involves ten (10) or more cakes and pastries."

Pursuant to these definitions, the court then determined the Pooles were in violation of the agreement every time they sold a cake or other item without providing labor to serve the items. He also found violations when the Pooles sold to La Quicherie and to the business which gave their pies as holiday gifts, notwithstanding the uncontradicted evidence that Terra Cotta's had never met the minimum sales quota. Further, the trial court refused to allow as a witness a well known local caterer whose testimony was offered to describe catering practices and the accepted use of that term in the industry. The proffered testimony included a description of catering as a "particular service specifically tailored to meet the wishes of a special client for a special event." The witness further stated that a "catering business does not have a set menu that they instantly respond to when the phone rings. It takes planning to buy the ingredients. Basically in my experience in the catering business, what was

4

nice about it was that you sold your product before you ever bought your inventory for the most part."

The Louisiana Civil Code provides clear and explicit rules for the interpretation of contracts. Article 2047 requires that the words of a contract be given their generally prevailing meaning and that technical terms be given their technical meaning when the contract involves a technical matter. Article 2053 states that doubtful provisions must be interpreted in light of the nature of the contract, equity, and usages, as well as the conduct of the parties. Article 2056 provides, "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."

We find the trial court erred in its interpretation of the contract at issue. By substituting its own definitions for the essential terms of the contract between the parties, the court violated Article 2056's contrary direction to construe doubt against the party who furnished the text. The court's interpretation would also permit incongruous results, as in the case of *Kite v. Gus Kaplan, Inc.,* 98-0715, 98-0751 (La. 11/17/99), 747 So.2d 503. There, a lease provided that the leased space may be changed, and the trial court found the lease allowed any type of change. The appellate court reversed and interpreted the broad and unspecific language to mean that the space may be changed only within reason and with consideration for the object of the contract, namely the operation of a fine jewelry department inside of a store. In the instant case, the interpretation of the term "cater" suggested by the trial court would require the Pooles to serve every cake or food item they sell, whether it be for a wedding, an intimate family dinner, or an office birthday party.

Our review of the record before us reveals no violation of the non-compete agreement by the Pooles. Damages were improperly awarded, as were attorney fees.

Accordingly, the judgment appealed from is reversed, and judgment is hereby rendered in favor of Kaylynn and Richard Poole, dismissing the claims brought by Terra Cotta's Café, at its cost.

**REVERSED AND RENDERED.**